O

# United States District Court
# Central District of California

| | |
|---|---|
| TERRI GIBSON,<br>and all other aggrieved employees,<br><br>    Plaintiffs,<br><br>    v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, et al.,<br><br>    Defendants. | Case № 5:20-cv-00318-ODW (SPx)<br><br>**ORDER DENYING MOTION FOR APPROVAL OF PAGA SETTLEMENT [31]** |

## I.   INTRODUCTION

Plaintiff Terri Gibson brings this diversity action against Defendants Swift Transportation Co. of Arizona, LLC and Swift Transportation Services, LLC (together, "Swift") under California's Private Attorneys General Act ("PAGA"). (Second Am. Compl. ("SAC"), ECF No. 19.)  With her sole cause of action under PAGA, Gibson alleges that Swift violated labor laws regarding meal and rest periods, overtime wages, accurate wage statements, and waiting time penalties.  (SAC ¶¶ 32–36.)  The parties have reached an agreement through mediation ("Settlement"), and Gibson now moves a second time for approval of the Settlement.  (Mot., ECF No. 31; Decl. of Manny Starr ("Starr Decl.") Ex. 1 ("Settlement"), ECF No. 31-2.)

After carefully considering the papers filed in connection with the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Accordingly, the Court **VACATES** the motion hearing scheduled for August 16, 2021, at 1:30 p.m. For the following reasons, the Motion is **DENIED WITHOUT PREJUDICE**.

## II.   BACKGROUND

Gibson initially filed this lawsuit as a putative class or collective action, but she currently asserts only a single cause of action for violations of PAGA. (SAC ¶¶ 28–37.) She alleges that Swift violated California Labor Code sections 203, 226, 226.7, 510, 512, and 1194 by failing to provide (1) compliant meal and rest periods, (2) premium pay for noncompliant meal and rest periods, (3) overtime wages, (4) accurate wage statements, and (5) waiting time penalties. (SAC ¶¶ 32–36.) Gibson brings her PAGA claim as a proxy for the State of California and on behalf of other similarly aggrieved employees. (SAC ¶ 2.)

This is Gibson's second motion to approve the Settlement. In the first motion, Gibson maintained that Swift was liable for a total of $3,702,972 in PAGA violations, but the parties stipulated to settling for $288,420[1], inclusive of attorneys' fees, costs, a service award, a settlement administrator fee, and payments to the Labor & Workforce Development Agency (LWDA) and the aggrieved employees. (Mot. for Approval of PAGA Settlement 6, ECF No. 28.) The Court denied the motion, principally because there was no evidence that the parties had provided the LWDA with a copy of the motion. (Order 4–5, ECF No. 30.) The Court also noted the paucity of evidence supporting the proposed settlement award. (*Id.* at 6–7.)

The Proposed Settlement Gibson filed in connection with this Renewed Motion appears to be the same one submitted with the initial motion. (Declaration of Manny Starr ¶ 4, Ex. 1 ("Original Settlement"), ECF No. 28-2; Settlement, ECF No. 31-2.) The Settlement identifies a set of aggrieved employees defined as "all persons who

---

[1] This amount is equal to $30 per challenged pay period.

have been, or currently are, employed by Defendants or any related corporate entity in California during the Relevant Period and who hold or held, job positions which Defendants classify as hourly and/or non-exempt non-driver positions." (Settlement ¶ 1.) There are "approximately 232" aggrieved employees, and the "Relevant Period" spans from February 18, 2019, to April 30, 2021, a total of just over 25 months. (*Id.* ¶¶ 1–2.)

Under the Settlement terms, Gibson "may apply for up to one third (1/3) of the Settlement Consideration as reasonably [sic] attorneys' fees" and "may also apply to recover . . . actual litigation costs from the Settlement Consideration." (Settlement ¶ 7.) Gibson would receive a service award of $7,500, and the fee to be paid to a settlement administrator is estimated to be no greater than $10,000, with any unused funds reverting to the PAGA penalty fund. (*Id.* ¶¶ 8–9.) Then, 75% of the remaining Settlement Consideration would be paid to the Labor and Workforce Development Agency ("LWDA"), and 25% would be distributed pro-rata among the allegedly aggrieved employees. (*Id.* ¶¶ 1, 5.) Gibson represents that this would result in an average recovery of $179.71 per aggrieved employee, which she claims "is a relatively significant amount in a PAGA case." (Mot. 15.)

Presently, Gibson moves for approval of the Settlement, as follows:
- $96,140 in attorneys' fees (one-third of the Settlement Consideration);
- $15,000 in litigation costs;
- $7,500 service award to Gibson;
- $3,000 settlement administrator costs to a third-party, Phoenix Class Action Settlement Administrators;
- $125,085 in PAGA penalties (75% of the remaining funds), paid to the LWDA; and
- $41,695 in PAGA penalties (25% of the remaining funds), distributed pro rata among the allegedly aggrieved employees.

(Mot. 11.)

### III. LEGAL STANDARD

California Labor Code section 2699(l)(2) provides that the "court shall review and approve any settlement of any civil action filed" under PAGA. However, "PAGA does not set a clear standard for evaluating settlements." *Basiliali v. Allegiant Air, LLC*, No. 2:18-cv-03888-RGK (MRWx), 2019 WL 8107885, at *3 (C.D. Cal. July 1, 2019) (collecting cases). "Indeed, the LWDA has stated that 'the LWDA is not aware of any existing case law establishing a specific benchmark for PAGA settlements.'" *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708-LHK, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017). "But district courts, wary of plaintiffs using a PAGA claim as a bargaining chip without due consideration of the public interest and the rights of other aggrieved individuals, must still analyze PAGA settlements to ensure that the terms are fair." *Basiliali*, 2019 WL 8107885, at *3 (internal quotation marks omitted)). Accordingly, courts in this Circuit approve PAGA settlements where "(1) the statutory requirements set forth by PAGA have been satisfied, and (2) the settlement agreement is fa[ir], reasonable, and adequate in view of PAGA's public policy goals." *Id.* (collecting cases).

### IV. ANALYSIS

As a preliminary matter, Gibson has cured the prior LWDA notice deficiency by providing evidence that Gibson's counsel uploaded the settlement documents to the LWDA's website the same day this motion was filed. (Starr Decl. Ex. 4 ("LWDA Submission"), ECF No. 31-4.) The remaining issue is whether the record supports the conclusion that the settlement is fair and reasonable.

To evaluate the fairness of a proposed PAGA settlement, some courts have considered: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the presence of government participation; and (6) the expertise and views of counsel." *Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2019 WL 2029061, at *2 (N.D. Cal. 2019)

(applying factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Ultimately, the question that courts must answer is whether the proposed settlement "would support PAGA's interest in augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016) (internal quotation marks omitted). This is because an employee suing her employer under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). "In a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency." *Id.* And because "collateral estoppel applies not only against a party to the prior action in which the issue was determined, but also against those for whom the party acted as an agent or proxy, . . . a judgment in an employee's action under the act binds not only that employee but also the state labor law enforcement agencies." *Id.*

Here, the Court again finds that there is insufficient evidence to support a finding that the settlement is fair and reasonable. There are crucial logical and informational gaps which render the Court incapable of making an informed determination that the settlement is fair. These gaps are as follows.

### A. Overtime Pay Violation Penalties

The first gap concerns the alleged overtime pay violations. Gibson contends that Swift failed to properly calculate overtime pay by failing to include employees' non-discretionary bonuses in the calculation of employees' regular rate of pay.[2] (SAC

---

[2] "Regular rate of pay" is a term of art which refers to the weighted average hourly rate received by an employee during a given pay period. 29 C.F.R. § 778.109. Thus, the regular rate of pay often does not correspond to any actual hourly rate paid, but is instead a theoretical average rate across a given pay period. *See* 29 C.F.R. § 778.115. Overtime pay is calculated by multiplying the regular rate of pay by 1.5. S*ee, e.g.*, *Duplesse v. County of Los Angeles*, 714 F. Supp. 2d 1045, 1055 (C.D. Cal. 2010); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 596 (2d Cir. 2007).

¶¶ 18-21.) This caused Gibson's regular rate of pay to be artificially deflated, which, in turn, caused Gibson and other Swift employees to receive less overtime pay than that to which they were statutorily entitled.

Gibson estimates approximately 9,614 pay periods where one or more Labor Code violations occurred. (Mot. 6.) Based on the statutorily fixed penalty of $100 per employee for the initial violation and $250[3] per employee for each subsequent violation, and an estimated violation rate of 59.6%, Gibson estimates a total of $572,553 in PAGA penalties based on the overtime violations.

The main problem with this showing is that the 59.6% violation rate is conclusory and unsupported. Nowhere in the brief or supporting declaration does Gibson provide the Court with the method used to arrive at a 59.6% violation rate.

This is not an insignificant omission. A change in the violation rate of only 10% would correspond to a change in total liability of over $50,000. To determine if the parties' overtime penalty calculations are reasonable, the Court must also determine that the 59.6% violation rate is reasonable. Here, Gibson has only provided that she "alleges" a 59.6% violation rate; there is no evidence or substantive argument regarding how this rate was calculated or why it is appropriate. (*See* Mot. 4.) Gibson should justify the operative violation rate so that the Court can determine whether the settlement is reasonable. *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 973 (N.D. Cal. 2019) (requesting more information from the parties where record provided "no supporting detail" for calculation of PAGA allocation).

Additionally, these calculations are based on a rate of $250 per pay period for subsequent violations. (Mot. 7:6.) Under California Labor Code section 2699(f)(2), this is erroneous; "PAGA provides for a civil penalty of $100 for any initial violation, and $200 for each subsequent violation per pay period." *See Taylor v. Interstate Grp.,*

---

[3] This figure is erroneous. As further discussed herein, the default PAGA penalty rate for subsequent violations is $200 per pay period. Cal. Lab. Code § 2699(f)(2).

*LLC*, No. 15-cv-05462-YGR, 2016 WL 861020, at *5.  The parties should adjust their calculations accordingly.

That said, the previous paragraph assumes that Labor Code section 2699(f)(2) is, in the first place, the proper penalty statute for the overtime violations.  This assumption may itself be erroneous.  Labor Code section 2699(f)(2) default penalties apply only when no other statute provides for a specific civil penalty.  Cal. Lab. Code § 2699(f).  In this case, California Labor Code section 558 contains an explicit provision for penalties against employers who underpay, including employers who underpay for overtime, and those penalties are $50 per pay period for the initial violation and $100 per pay period for each subsequent violation.  *Culley v. Lincare Inc.*, 236 F. Supp. 3d 1184, 1196 (E.D. Cal. 2017).  Gibson should address the effect of Labor Code section 558 in future settlement approval motions and adjust the calculations if and as necessary.

### B. Rest Break Violation Penalties

The next logical gap concerns the parties' calculation of the rest break violation penalties.  Gibson explains that the parties calculated the 76.2% violation rate for the meal (not rest) break violations by using Swift's timecard data to calculate what percentage of employee timesheets suggested that a meal break was not given at the proper time or for the proper amount of time.  (Mot. 8.)  There is nothing facially objectionable about this approach for the meal break calculations.  However, the concern with the *rest* break violations is that there is no basis for applying this 76.2% figure, which was calculated for meal break violations, to the rest break calculations.  Gibson has not presented an equivalent timesheet analysis for the rest break violations, and the Court will not assume without any evidence or justification that the meal break violation rate and the rest break violation rate are the same.  For this motion to be granted, Gibson must provide the Court with a reasonable basis for the parties' calculation of rest break penalties, and in this case, using meal break violation rates as a proxy for rest break violation rates is not reasonable.  *See O'Connor*, 201

F. Supp. 3d at 1135 (rejecting a proposed PAGA settlement as not fair and adequate when the parties provided no support for a PAGA settlement that differs significantly from the estimated total PAGA liability).

### C. Failure to Show Work

Finally, and more generally, Gibson has omitted key figures, assumptions, and calculations from the moving papers. To illustrate, Gibson provides that there are 232 aggrieved employees with an estimated 9,614 pay periods where Labor Code violations occurred. From this data, along with the bare fact of the 59.6% overtime pay violation rate, Gibson leaps, without any additional analysis or calculation, to the conclusion that the estimated maximum PAGA exposure was $572,553 for the overtime pay violations. (*See* Mot. 7.)

This is insufficient. Even accepting Gibson's figures, the calculations do not yield $572,553.[4] The parties are using other figures or assumptions. In this case, so that the Court may determine if the settlement is fair and reasonable, Gibson should provide all operative data points and assumptions and should describe the calculations that yield the given exposure values based on 232 aggrieved employees, 9,614 pay periods, and a 59.6% violation rate.

Gibson has made similar omissions in calculating the meal and rest break penalties. Gibson should provide each figure and assumption used to calculate that 232 aggrieved employees, 9,614 pay periods, and the specified violation rate yields the given exposure values. This will also require Gibson to specify what penalty rates the parties are using for their meal and rest break penalty calculations.

The calculations for the wage statement penalties and the waiting time penalties are similarly deficient. The parties should show their work with respect to these components of the liability calculations.

---

[4] (232 initial periods * $100/period) + ((9,614 - 232) periods * $250/period) = $2,368,700. Multiplying this amount by 59.6% yields $1,411,745.20.

### D. Summary

The motion is denied without prejudice. The Court reiterates that the proposed settlement may very well be reasonable. But the Court will not make this finding until the basis for the calculations is clear and capable of meaningful analysis. In filing their second renewed settlement approval motion, the parties should ensure that all relevant figures, assumptions, and calculations are included, so that the Court can follow those same steps with its own calculator and arrive at the same amounts set forth in the moving papers. Additionally, because this case is settling, the Court will vacate all pretrial and trial dates in this matter.

## V. CONCLUSION

The Renewed Motion is **DENIED without prejudice**. (ECF No. 31.) Gibson's Second Renewed Motion for Approval of PAGA Settlement is due by **October 11, 2021**. All pretrial and trial dates in this matter are hereby **VACATED**.

**IT IS SO ORDERED.**

August 10, 2021

_____
             OTIS D. WRIGHT, II
     UNITED STATES DISTRICT JUDGE